## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KAREN MCPETERS, *et al*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 4:11-CV-2056** |
| **LEXISNEXIS,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM AND ORDER</u>

For some four years now, Plaintiffs have sought to challenge the e-filing fees implemented by certain Texas county courts.  Plaintiff Karen McPeters originally filed suit against LexisNexis and a series of government employees and entities and, once that action was dismissed, brought this separate proceeding against LexisNexis, the provider of the e-filing services, alone.

The Court turns to several pending issues in this Memorandum and Order.  First, there are four motions: Plaintiffs' Motion to Certify a Class (Doc. No. 146), Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 155), Defendant's Motion for Summary Judgment (Doc. No. 156), and, less pressingly, Plaintiffs' Motion for a Protective Order (Doc. No. 157).  Second, the Court has independently elected to revisit an earlier order, in which it denied Defendant's Motion to Dismiss certain of Plaintiffs' claims.  (*See* Doc. No. 100 (order denying motion); Doc. No. 158 (order for supplemental briefing).)  The Court has reviewed exhaustive briefing on each of these issues and held a lengthy hearing on the motion to certify.

In this Memorandum and Order, the Court endeavors to bring this case to a final resolution (pending appeal, of course).  First, it reconsiders its earlier ruling and **GRANTS**

Defendant's Motion to Dismiss Plaintiffs' claims under Section 15.05 of the Texas Free Enterprise and Antitrust Act. Second, it **DENIES** Plaintiffs' Motion to Certify a Class for the purposes of their unconscionability claim. Finally, it **GRANTS** Defendant's Motion for Summary Judgment on all remaining claims. Plaintiffs' Motions for Partial Summary Judgment and for a Protective Order will be **DENIED AS MOOT**. The Court explains its reasoning below.

## I.  IMMUNITY

LexisNexis contends, albeit only in the short final paragraph of its twenty-five-page brief in support of summary judgment, that it is entitled to immunity "from claims where [it] is performing services related to a judicial function, pursuant to court order." (Doc. No. 156 at 30.) It is true that, "[w]hen judges delegate their authority or appoint others to perform services for the court, the judge's absolute judicial immunity may extend to his or her delegate or appointee." *Vernon v. Rollins-Threats*, No. CIV.A.3:04CV1482BFP, 2005 WL 3742821, at *4 (N.D. Tex. Nov. 2, 2005). However, "[d]erived judicial immunity extends only to those officials whose 'judgments are functionally comparable to those of judges' and who 'exercise a discretionary judgment as part of their function.'" *Id.* (quoting *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 & n. 3 (1993)). The Court cannot conceive of how LexisNexis, as facilitator of e-filing and e-serving, fulfilled such a role and thus declines to cloak Defendant in any sort of immunity.

## II.  SECTION 15.05 CLAIMS

Plaintiffs have alleged violations of the Texas Free Enterprise and Antitrust Act (TFEAA), as codified by Texas Business & Commerce Code § 15.05(a) and (b). Sub-section (a) dictates that "[e]very contract, combination, or conspiracy in restraint of trade or commerce is unlawful," while section (b) makes its "unlawful for any person to monopolize, attempt to

monopolize, or conspire to monopolize any part of trade or commerce."  With respect to the Section 15.05(a) claim, Plaintiffs argue that the Court could find the LexisNexis user fees as illegal *per se*, or in the alternative, an unreasonable restraint of trade.  A brief history of this litigation will help to put these claims in context.  The Court then turns to its substantive analysis.

### A.  Litigation History

In 2010, Plaintiff McPeters brought a putative class action against Judge Frederick E. Edwards, who originally authorized e-filing in Montgomery County, the county clerk, the county as an entity, and LexisNexis.  *See McPeters v. Edwards (McPeters I)*, 806 F. Supp. 2d 978, 981 (S.D. Tex. 2011) (Ellison, J.), *aff'd,* 464 F. App'x 351 (5th Cir. 2012).  Plaintiff alleged that the e-filing system at issue "violate[d] the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68; the due process and equal protection provisions of the U.S. Constitution, pursuant to 42 U.S.C. § 1983; the separation of powers, equal protection, open courts, and due course of law provisions of the Texas Constitution; the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001 *et seq.* (Vernon's 2005); and [amounted to] common-law fraud, conspiracy, and violation of statutory duties."  *Id.* at 982.

The Court dismissed the federal claims on a Rule 12(b)(6) motion.  In considering whether to exercise supplemental jurisdiction, the Court noted that it was "troubled by certain aspects of the e-filing system at issue."  *Id.* at 991.  More specifically, the Court explained that:

> It is not clear that the e-filing system, and the accompanying fees, were properly adopted within the bounds of applicable Texas law. The Texas Government Code provides that rules and procedures regulating the use of electronic filing systems, including local rules, must be approved by the Texas Supreme Court.  Tex. Govt. Code §§ 51.803, 51.807 (Vernon's 2005).  Although the Montgomery County Local Rules were approved in 1997, the fees charged by LexisNexis were not specifically approved.  (Ex. 2 to Judge Edwards's Mot. to Dismiss 2d. Am. Compl., Doc. No. 56–2.)  In addition, the Texas Government Code sets forth

> filing fees and other fees to be charged by district clerks. Tex. Govt. Code §§ 51.317–19, 101.061–101.0617, 103.021–103–033 (Vernon's 2005). The statute provides that "for performing any other service prescribed or authorized by law for which no fee is set by law" the district clerk shall collect "a reasonable fee." *Id.* at § 51.319. . . .
>
> It is not clear that under [certain other] statutes the district clerk may delegate fee-setting authority to a private company. It is also not clear that there is any limit to the rates LexisNexis could charge, subject only to Montgomery County ceasing to use LexisNexis's services.

*Id.*[1]  But, because "no federal remedy [wa]s available under the facts presented," the Court declined to exercise supplemental jurisdiction. *Id.* at 992.

Three days before the Court granted Defendant's Motion to Dismiss in *McPeters I*, McPeters filed this suit in state court, naming LexisNexis as the sole defendant and alleging violations of the Texas Deceptive Trade Practices-Consumer Protect Act, Procedural and Substantive Due Process rights under the state constitution, the Texas Theft Liability Act, Texas Business & Commerce Code Section 15.05(a), as well as common law fraud.  (*See* Doc. No. 1.) Defendant removed to the Western District of Texas and then successfully moved to have the case transferred to this Court.  (Doc. Nos. 13, 21.)  After some motions practice, Plaintiff filed a First Amended Complaint.  (Doc. No. 54-2.)  That Complaint set forth most of the same basic claims, but its TFEAA claims went from being one of Plaintiff's final allegations to her very first, and the Complaint largely tracked the language of the *McPeters I* Memorandum & Order, quoted above, in which the Court explained why it was "troubled" by the e-filing system at issue. (*See id.* at 7-10.)  McPeters alleged violations of Section 15.05(a) and (b), and this time included her allegation that the filing system was illegal *per se*.  (*Id.* at 4.)

Defendant's Motion to Dismiss the First Amended Complaint was granted in part and

---

[1] Plaintiff had discussed these potential government code and local government code infractions in her Response in Opposition to the Motion to Dismiss (*see* Doc. No. 74 in Case No. 10-cv-1103, at 22-24.)  It is not exactly clear, however, whether Plaintiff sought to hold LexisNexis accountable for the violations or just the governmental defendants.

denied in part.  *See McPeters v. LexisNexis (McPeters II)*, 910 F. Supp. 2d 981 (S.D. Tex. 2012)

(Doc. No. 100).  The TFEAA claims survived.  With respect to *per se* illegality, the Court held:

> For the reasons previously noted by this Court in *McPeters v. Edwards,* there are a number of reasons why Defendant's e-filing fees may be illegal per se. *McPeters v. Edwards,* 806 F. Supp. 2d at 991.  First, the fees charged by Defendant were not specifically approved. (Ex. 2 to Judge Edwards's Mot. to Dismiss 2d. Am. Compl., Doc. No. 56–2.)  The Texas Government Code provides that rules and procedures regulating the use of electronic filing systems, including local rules, must be approved by the Texas Supreme Court.  Tex. Govt. Code §§ 51.803, 51.807 (Vernon's 2005).  While the e-filing system was approved by the Texas Supreme Court, the specific amounts charged by Defendant have not been approved.  Second, it is not clear whether the district court clerk may delegate fee-setting authority to a private company.  Thus, there is a plausible claim that Defendant's practices are illegal per se.

*Id.* at 994.  And, further, with respect to the other TFEAA claims, the Court explained:

> Plaintiff argues that Defendant's practices are an unreasonable restraint, § 15.05(a), or a monopoly, § 15.05(b). Plaintiff has alleged that Defendant's contract was approved in circumvention of the competitive bidding requirements imposed under the Texas Local Government Code, § 262.021.  Defendant states in its Motion that Plaintiff has not shown that the alleged contract has an adverse effect on competition in the relevant market.  If competitive bidding requirements were circumvented, that would be an adverse effect on competition. Thus, Defendant's Motion with respect to § 15.05(a) and § 15.05(b) is denied.

*Id.*  Plaintiff filed a Second Amended Complaint in January 2013, adding Byron Barclay as a named Plaintiff.  (Doc. No. 118.)  The TFEAA claims did not change in a meaningful way.  (*Id.*)

As this case has progressed and the Court has considered Plaintiffs' claims in the context of their Motion to Certify and Defendant's Motion for Summary Judgment, the Court has grown concerned that the decision to deny Defendant's Motion to Dismiss the TFEAA claims may have been in error.  At the very least, it is necessary to undertake a more searching review of whether the state law violations that troubled the Court in the *McPeters v. Edwards* litigation are cognizable as antitrust and monopoly claims in this lawsuit.  Consequently, the Court requested that the parties submit supplemental briefs addressing whether the TFEAA claims should have been dismissed for failure to state a claim.  (Doc. No. 158.)  Below, the Court turns first to the

law-of-the-case doctrine and its authority to revisit its earlier ruling *sua sponte*.  It then turns to a more substantive inquiry.

### B.  Legal Framework

#### 1.  Law of the Case Doctrine

Plaintiffs suggest that the Court's conclusions in its earlier Memoranda and Orders are "effectively the law of the case" and thus should not be revisited absent "changes in laws and facts."  (Doc. No. 160 at 5.)   The law-of-the-case doctrine, however, is no impediment to reconsidering the Court's own prior ruling.  That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."  *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (internal quotation marks omitted).  So stated, the Court understands Plaintiffs' invocation of it.  But, the real significance of the law-of-the-case doctrine is that it "preclude[s] a reexamination of issues of law decided on appeal, explicitly or by necessary implication, either by the district court on remand or by the appellate court in a subsequent appeal."  *Chapman v. Nat'l Aeronautics & Space Admin.*, 736 F.2d 238, 241 (5th Cir. 1984); *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.6 (2d ed. 2013) ("The question is not whether a court should adhere to its own prior ruling without reexamination, but whether a different court should refuse its ordinary reviewing responsibility to encourage compliance with fair and efficient procedure.").  Here, the Court intends only to reexamine its own ruling, not that of another court.  Federal Rule of Civil Procedure 54(b) grants the district court the authority to do so for "for any reason it deems sufficient."  *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (internal quotation marks omitted).  Indeed, the Fifth Circuit has stated in no uncertain terms that "the law-of-the-case doctrine does not operate to prevent a

district court from reconsidering prior rulings." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010).  Suffice it to say, when the Court is wrong, it can — and, if practicable, will — set things right.

### 2. Judgment on the Pleadings

Because the Court is revisiting its decision on a Motion to Dismiss for Failure to State a Claim, and because Defendant has now filed an Answer, the Court looks to the framework of Federal Rule of Civil Procedure 12(c), which allows the Court to decide the case on the pleadings.  Rule 12(c) is governed by "the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010). Consequently, to avoid dismissal, Plaintiffs must have pleaded "sufficient facts to 'state a claim to relief that is plausible on its face.'" *Id.* at 544 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### C. Analysis

#### 1. Must Plaintiffs Demonstrate Antitrust Standing?

The parties disagree as to a threshold issue: should courts construing Texas Free Enterprise and Antitrust Act claims look to federal law for guidance?  Defendant contends that, because the Texas Free Enterprise and Antitrust Act is modeled after the Sherman Act, courts should do just that.  (*See* Doc. No. 156 at 12; *see also* Doc. No. 164 at 12.)  Most insistently, Defendant urges the Court to impose the federal requirement that a plaintiff demonstrate antitrust standing (in addition to Article III standing).  Antitrust standing, discussed at greater length below, requires that the plaintiffs plead (and then prove) an injury "'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988) (quoting

*Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S. 477, 489 (1977)).[2]  Plaintiffs, in contrast, argue that imposing such a requirement would "convert" their claims from state to federal law. (*See* Doc. No. 162 at 15.)

When the Texas Free Enterprise and Antitrust Act was enacted in 1983, "the Legislature largely incorporated federal anti-monopoly and anti-combination language from sections 1 and 2 of the Sherman Antitrust Trust Act and from sections 3, 6, and 7 of the Clayton Act."  *Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 511 (Tex. 1995) (Gonzalez, J., concurring).  The legislature included in the Act that its "purpose" is " to maintain and promote economic competition in trade and commerce occurring wholly or partly within the State of Texas and to provide the benefits of that competition to consumers in the state."  Tex. Bus. & Com. Code § 15.04.  It further explained that, "to accomplish this purpose," the Act "shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose."  *Id.*

The Texas Supreme Court therefore has acknowledged that "the Legislature's mandate that Texas antitrust law be harmonized with federal antitrust law necessarily constrains this Court."  *Segura*, 907 S.W.2d at 511 (Gonzalez, J., concurring).  And, with respect to both Sections 15.05(a) and 15.05(b), the Texas Supreme Court has instructed lower courts to adhere to "federal judicial interpretations" of the analogous federal statute.  *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 687 (Tex. 1990) ("[W]e look to federal judicial interpretations of section 1 of the Sherman Act in applying section 15.05(a) of our state antitrust law."); *Caller-Times Pub. Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992) ("Because section 15.05(b) of the Texas Antitrust Act is comparable to section 2 of the Sherman Antitrust Act, we look to

---

[2] The Fifth Circuit has determined that, in some cases, it can be appropriate to resolve the existence of antitrust injury and standing on the pleadings.  *See PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 419-20 (5th Cir. 2010).

federal law interpreting section 2 of the Sherman Act for guidance in interpreting section 15.05(b) of the Texas Antitrust Act.").

As a result, because antitrust standing is a requirement for suits brought under the Sherman Act, *see Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007) (collecting cases), first principles would seem to dictate that claims brought under the TFEAA require no less. Were this not so, a wide swath of antitrust claims would be, at least arguably, cognizable under state, but not federal, law.  And if that were to be true, the two would fall out of 'harmony.'  Case law confirms the Court's intuition; indeed, Texas courts appear to agree that TFEAA plaintiffs must have antitrust standing.  *See, e.g.*, *Marlin v. Robertson*, 307 S.W.3d 418, 424 (Tex. App.-San Antonio 2009); *Roberts v. Whitfill*, 191 S.W.3d 348, 354 (Tex. App.-Waco 2006); *Maranatha Temple, Inc. v. Enter. Products Co.*, 893 S.W.2d 92, 105 (Tex. App.-Houston 1994); *Scott v. Galusha*, 890 S.W.2d 945, 950 (Tex. App.-Fort Worth 1994).

Plaintiffs' argument to the contrary is unavailing.  Rather than distinguish any of the above-cited cases, Plaintiffs seize on the Fifth Circuit's statement in *American Airlines, Inc. v. Sabre, Inc.*, that "[c]laims under the TFEAA are 'wholly state-law claims' that do not raise a federal issue."  694 F.3d 539, 543 (5th Cir. 2012) (quoting *Waste Control Specialists, LLC v. Envirocare of Texas, Inc.,* 199 F.3d 781, 784 (5th Cir. 2000), *modified in part,* 207 F.3d 225 (5th Cir. 2000)).  But Plaintiffs have taken that quotation out of context.

The *American Airlines* court was called upon to review a district court's decision to award attorney's fees to American Airlines on the grounds that Sabre's removal of the case from state court was objectively unreasonable.  *Id.* at 541.  To determine whether Sabre had advanced a reasonable, good faith interpretation of the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), the Fifth Circuit had to address

9

Sabre's argument that a "TFEAA claim necessarily raises a stated federal issue because the TFEAA requires the state court to construe the statute 'in harmony with federal judicial interpretations of comparable federal antitrust statutes.'"  *Am. Airlines*, 694 F.2d at 542 (quoting Tex. Bus. & Com. Code § 15.04).  To the contrary, the Fifth Circuit agreed with the district court that it was unreasonable for Sabre to argue "that the mere fact that a federal standard is to be referenced by a state court in determining whether there has been a state-law violation causes a state-law claim to necessarily raise a stated federal issue."  *Id.* at 543 (internal quotation marks omitted).  It was in this context that the court of appeals reiterated that TFEAA claims are "wholly state-law claims."  Far from disclaiming the usefulness of federal precedent in analyzing TFEAA claims, the court expressly affirmed that "state courts 'look to federal law interpreting . . . the Sherman Act for guidance in interpreting . . . the Texas Antitrust Act,'" *id.* at 542-53 (quoting *Caller-Times*, 826 S.W.2d at 580).  That was just not enough to warrant federal jurisdiction.  *American Airlines* does not advance the ball for Plaintiffs.

Because Defendant has marshaled overwhelming support for the proposition that Plaintiffs must have antitrust standing in order to press claims under Section 15.05 and Plaintiffs have not cited any to the contrary, the next step is to determine whether Plaintiffs have antitrust standing.

### 2.  Do Plaintiffs Have Antitrust Standing?

"Not every person who complains of injury as a result of violation of the antitrust laws has standing to assert claims under the statutes."  *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988).  Rather, as is relevant here, that injury must be an "'injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'"  *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S.

477, 489 (1977)).  And, "even if the plaintiff meets these requirements, the court must consider whether he is a 'proper plaintiff' to sue for damages, examining such factors as (1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment."  *Id.* (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983)).

Defendant argues both that Plaintiffs have failed to show an actual injury and that they have failed to show that any injury they have suffered flowed from Defendant's acts.  (Doc. No. 164 at 17-19.)  It is the second argument that most concerns the Court.[3]

Looking at the Second Amended Complaint, the portion on Section 15.05(a) proceeds as follows: it explains the statute and Plaintiffs' contentions (Doc. No. 118 ¶¶ 38-39); it recounts how LexisNexis came to enter contracts with Montgomery and Jefferson Counties (*id.* ¶¶ 40-58); it then describes some of the pricing results in the two counties and compares them to e-filing services in another county (*id.* ¶¶ 59-69); and finally it explains why the charges were unlawful. In that final section, Plaintiffs allege that the charges were "not authorized under Texas Government Code, §§ 51.317-.319, §§ 101.061-.067, and §§ 103.021-.033." (*Id.* ¶ 70.)  Further, Plaintiffs contend that "[t]he charges are unlawful because they were never been (sic) approved by the Texas Supreme Court.  The Texas Government Code, § 51.803 and § 51.807, required that rules and procedures regulating the use of e-filing systems, including local rules, must be approved by the Texas Supreme Court." (*Id.* ¶ 72.)  Then, Plaintiffs urge that "the charges are unlawful because a district clerk in Texas has no statutory authority to delegate fee setting

---

[3] For the purposes of this Memorandum and Order, the Court assumes, without deciding, that Plaintiffs have shown *an injury* that would be cognizable as antitrust injury.

authority to a private company.  At most, a district clerk may charge a reasonable fee for service when none is set by law." (*Id.* ¶ 73 (citing Texas Government Code § 51.319).)  Next, Plaintiffs assert that "[n]o private company may set an unregulated tariff on access to the courts in Texas. Charges by LexisNexis must be approved by the county." (*Id.* ¶ 74.)  Plaintiffs then allege that "the charges were unlawful because they duplicate part of the fees already charged and collected by the Montgomery County District Clerk and Jefferson County District Clerk when each lawsuit was filed." (*Id.* ¶ 75.)  Plaintiffs also accuse Defendant of predatory overreaching because it increased its charge for mailing invoices and charges litigants to review public records. (*Id.* ¶¶ 78-80.)

With respect to Section § 15.05(b), Plaintiffs first incorporate their other allegations and explain the statute. (*Id.* ¶¶ 83-84.)  Plaintiffs then add that they "contend that the monopoly acquired and maintained by LexisNexis is unlawful due to predatory conduct which reasonably appears to exist only because of the monopoly." (*Id.* ¶ 85.)  Finally, they allege that "LexisNexis has gone so far as to include provisions in its contract with Montgomery County requiring e-filing to be mandated and requiring no interference in generating revenue.  Further, LexisNexis perpetuates its predatory conduct by threatening litigants and their attorneys with reports to the court, the state bar, or both." (*Id.* ¶ 86.)

These allegations make clear that the wrongful conduct of which Plaintiffs complain was *not* undertaken by LexisNexis.  For instance, Plaintiffs allege a violation of Texas Government Code § 51.803, but that statute governs the conduct of the state Supreme Court and clerks of court.[4]  Likewise, Plaintiffs complain that Texas Government Code § 51.807 has been violated,

---

[4] Tex. Gov't Code § 51.803 reads:
　　(a) The supreme court shall adopt rules and procedures to regulate the use of electronic copying devices for filing in the courts.

12

but that statute controls what "courts of a county" may do.[5]  So too Texas Government Code §

51.319; it regulates the fees that a district clerk must collect.[6]  Texas Local Government Code §

132.007, which directs counties and municipalities to approve fees charged by vendors who have

contracted with the county, and Texas Local Government Code § 262.023, which requires, under

certain circumstances, that counties solicit competitive bids, are also statutes that seek to

proscribe the actions of local government, not private Defendants like LexisNexis.

Unsurprisingly, then, Plaintiffs could not have asserted a claim against LexisNexis for violations

of any of these statutes.  Plaintiffs do not argue otherwise.  (Doc. No. 165 at 6-7.)

        Nevertheless, Plaintiffs contend that "[v]iolations of the various Government Codes are

evidence" in support of their "cause of action under § 15.05."  (Doc. No. 165 at 6.)  That

"evidence" proves too much.  For the purposes of a motion for judgment on the pleadings, the

court takes as true Plaintiffs' allegations that all of the Government Code and Local Government

Code violations did in fact occur.  Looked at another way, the Court assumes that Plaintiffs could

prove up those statutory infractions.  But in doing so, it becomes abundantly clear that, if events

---

        (b) An instrument may only be filed as provided by this subchapter if the district, county, or court
        of appeals has established a system for receiving electronically transmitted information from an
        electronic copying device, and the system has been approved by the supreme court. A district or
        county clerk or clerk of a court of appeals who believes there is justification for use of an
        electronic filing system in the clerk's office must request approval of the system from the supreme
        court. The supreme court shall approve or disapprove the system and may withdraw approval any
        time the system does not meet its requirements.
[5] Tex. Gov't Code § 51.807 states:
        (a) The courts of a county may adopt local rules that govern the transmission and receipt of
        documents or reports stored or created in digital electronic or facsimile form and that provide for
        recognition of those documents as the original record for file or for evidentiary purposes.
        (b) The rules shall be submitted to the supreme court for review and adoption as a part of the
        overall plan or procedure for the electronic filing of documents.
[6] Tex. Gov't Code § 51.319 holds:
        The district clerk shall collect the following fees for services performed by the clerk:
        (1) for performing services related to the matter of the estate of a deceased person or a minor
        transacted in the district court, the same fees allowed the county clerk for those services;
        (2) for serving process by certified or registered mail, the same fee that sheriffs and constables are
        authorized to charge for the service under Section 118.131, Local Government Code; and
        (3) for performing any other service prescribed or authorized by law for which no fee is set by
        law, a reasonable fee.

unfolded as Plaintiffs claim they did, any injuries they suffered flowed from the counties' and courts' failure to comply with the law, not the actions of LexisNexis.  And if that is so, even assuming they have Article III standing, Plaintiffs lack antitrust standing.

Plaintiffs vigorously maintain that they "are not trying to enforce the Texas Government Codes," but instead are citing those violations in the same way a plaintiff might refer to "violations of OSHA regulations [to] show that a defendant breached the applicable standard of conduct, or a violation of the Texas Transportation Code to evidence negligence per se."  (*Id.* at 10.)  That analogy fails to account for Plaintiffs' fundamental failing: their "evidence" shows that they have brought the wrong defendant to account.  To run with Plaintiffs' preferred analogy, this case is akin to one in which a plaintiff injured in an auto accident seeks to prove another driver's negligence *per se* by citing to a (hypothetical) Texas Transportation Code section requiring counties and municipalities to inspect all vehicles registered to local drivers. Had a violation of that statute been the hypothetical plaintiff's only explanation for his injuries, it would have been as clear there as it is here that plaintiff's suit was proceeding against the wrong defendant.  There, just like here, plaintiff's claim would run aground because a statute imposing a duty on one entity is rarely probative of another's wrongdoing.[7]

---

[7] The seminal cases on negligence *per se* confirm that a statute can only supply the applicable standard of care when the statute governs the conduct of the relevant Defendant.  *See, e.g.*, *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (Posner, J.) (explaining that, where the common law imposes a duty, a statute can supply the relevant standard of care and its violation can amount to *prima facie* evidence of negligence, but that, because Defendant's employees, as mere bystanders, owed Plaintiff no duty of care, a statute requiring that they report child abuse could not amount to *prima facie* evidence of negligence); *Murray v. O & A Exp., Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) (holding that trial court did not err in concluding that the violation of a statute requiring that idling or parked cars pull completely off of a highway, turn on warning lights, and place warning flares and reflectors on the highway amounted to negligence *per se* on the part of a driver who did neither of those three things); *De Haen v. Rockwood Sprinkler Co. of Massachusetts*, 179 N.E. 764 (N.Y. 1932) (acknowledging that, in a suit against construction workers, the violation of a statute directing construction works to employ certain safeguards can establish liability if the hazard that causes plaintiff's injury is of the same sort the statute is intended to protect against); Restatement (Second) of Torts § 288B cmt. b(1) (1965) (offering, as illustration, that: "A statute, which is found to define a standard of conduct for the protection of persons on the highway against the risk of collision, provides that after sunset no person shall drive an unlighted vehicle on the highway. Without excuse, A drives an unlighted vehicle on the highway after sunset. As a result of the absence of lights, he collides with B's automobile and injures B. A's

The Court's holding here is consistent with the general proposition that, where a private right of action does not exist for the violation of a particular statute, a plaintiff cannot "create" one by alleging that the violation of that statute nevertheless satisfies an element of another claim. *SCI Texas Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 154 (Tex. App.-El Paso 2007). In *Hijar*, Plaintiffs had asserted claims for breach of contract, illegal contract, civil conspiracy, and a violation of the Texas Occupations Code. *Id.* Each of those claims was based upon an alleged violation of the federal Funeral Rule. *Id.* Because there was no private right of action for a violation of that rule, the court held that appellees had no standing to assert their claims, even pleaded as different causes of action. *Id.*

Likewise, in *Davis v. Hendrick Autoguard, Inc.*, 294 S.W.3d 835 (Tex. App.-Dallas 2009), plaintiff had alleged that defendant had run afoul of Section 1304.157 of the Service Contract Regulatory Act. *Id.* at 837. Finding that there was no private right of action under that Section, the court also dismissed plaintiff's breach of contract action — which was premised on the SCRA violation — because it was clear that plaintiff had "attempt[ed] to achieve indirectly through a common law contract action what he cannot do directly under the statute." *Id.* at 840. The court reached the same conclusion with respect to plaintiff's Deceptive Trade Practices Act claim, citing *Hijar* and declaring that plaintiff could not "create a private right of action where the legislature did not intend for one to exist by recasting his claims under the SCRA as a DTPA action." *Id*.

Finally, in *Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503 (Tex. 1995), the Texas Supreme Court refused to allow plaintiffs who lacked standing to press a TFEAA claim to re-characterize their allegation as one arising under the DTPA. It noted that "[w]e will not interpret the DTPA in a manner that rewards creative pleading at the expense of consistent

violation of the statute is negligence, which makes him subject to liability to B.").

application of legal principles." *Id.* at 507.  So too here.

Two other broad principles counsel in favor of today's holding.  First, "where the legislature creates a statutory framework to secure performance of and compliance with a statute, it is 'the reasonable implication that the legislature meant for only the statutory remedies to be applied.'"  *Davis*, 294 S.W.3d at 840 (quoting *Borger v. Brand*, 118 S.W.2d 303, 306 (Tex. 1938)).  With respect to competitive bidding procedures, the legislature provided a remedy: a suit against the county for an injunction.  *See* Texas Local Government Code § 262.033 ("Any property tax paying citizen of the county may enjoin performance under a contract made by a county in violation of this subchapter.")  The existence of that right of action suggests that this Court should not countenance Plaintiffs' attempt to create an alternative.  *Cf. Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981) (holding that, where Congress has created "elaborate enforcement provisions," courts ought not "assume[] that Congress intended to authorize by implication additional judicial remedies for private citizens").

Second, with respect to Plaintiffs' "evidence" that Defendant failed to conform to the statutory framework governing e-filing systems, the Court is reminded that it is not always the case that, where the legislature has imposed a duty on one entity, it has also conferred a correlative right upon another.  In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), for example, the Supreme Court held that a student whose personal information was disclosed by his university could not use 42 U.S.C. § 1983 to allege a violation of the Federal Education Rights and Privacy Act of 1974.  *Id.* at 276-77.  The Court explained that, because FERPA's non-disclosure provisions "speak only to the Secretary of Education" and in "in terms of institutional policy and practice," they do not confer enforceable rights on individual citizens.  *Id.* at 287-88.  *Gonzaga* is certainly not dispositive of the (state law) issue now before the Court, but it is nonetheless

important to emphasize that courts must carefully analyze whether a particular plaintiff is the proper enforcer of another's obligation.  Here, Plaintiffs may be able to prove that certain statutory directives were not heeded, but that does not mean they can bring suit for a remedy.  That the Defendant is not the target of those statutory directives only bolsters the Court's conclusion.

*  *  *

In short, the Court revisits its earlier decision to deny Defendant's Motion to Dismiss the TFEAA claims.  It now grants Defendant judgment on the pleadings with respect to these claims.  Plaintiffs lack antitrust standing because their factual allegations — that certain statutory directives were not heeded — inculpate county courts, clerks, and judges, not LexisNexis.  This conclusion is consistent with the Court's belief that Plaintiffs should not be permitted to recast claims that they are not authorized to bring as TFEAA claims.

## III.   UNCONSCIONABILITY CLAIM

### A.  Motion to Certify

#### 1.  Legal Framework

Plaintiff seeks to certify a class under Federal Rule of Civil Procedure 23(b)(3).  The Supreme Court has called that rule "an 'adventuresome innovation' of the 1966 amendments . . . framed for situations 'in which class-action treatment is not as clearly called for.'"  *Wal-Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S. Ct. 2541, 2558 (2011) (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614-15 (1997)).  In addition to the standard Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — Rule 23(b)(3) "requires a court to find that 'the questions of law or fact common to class members predominate over any questions affecting only individual members.'"  *Comcast Corp. v. Behrend*, — U.S. —, 133 S. Ct. 1426,

1432 (2013) (quoting Fed R. Civ. P. 23(b)).  A party seeking class certification must also show that "a class action 'is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2013 WL 6388408, at *4 (S.D. Tex. Dec. 6, 2013) (Ellison, J.) (quoting Fed. R. Civ. P. 23(b)(3)).  "[I]ndividualized monetary claims belong in Rule 23(b)(3)."  *Wal-Mart*, 131 S. Ct. at 2558.

Predominance is a common stumbling block.  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 133 S. Ct. at 1432 (citing *Amchem*, 521 U.S. at 623-624).  The predominance requirement "tests 'whether the proposed [class is] sufficiently cohesive to warrant adjudication by representation.'"  *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003) (quoting *Amchem*, 521 U.S. at 623). The inquiry "'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class,' a process that ultimately 'prevents the class from degenerating into a series of individual trials.'"  *Id.* at 302 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732, 738 (2003)).  In short, "the focus of the 23(b)(3) class certification inquiry — predominance — is not whether the plaintiffs will fail or succeed, but whether they will fail or succeed *together.*"  *Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 431 (5th Cir. 2013) (citing *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 1197 (2013)), *cert. granted*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 636 (2013).

2.  *Analysis*

Texas Business and Commerce Code Section 17.50, a product of the Deceptive Trade Practices Act, states, in pertinent part, that a "consumer" may bring suit where "any unconscionable action or course of action by any person" causes "economic damages or damages

for mental anguish." Tex. Bus. & Com. Code § 17.50(a)(3). The act defines "unconscionable action or course of action" as one that "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." *Id.* § 17.45(5).[8]

Plaintiffs assert that certification is proper because their unconscionability allegation is not "dependent upon individual characteristics of class members." (Doc. No. 148 at 7.) Rather, Plaintiffs contend that class members were "taken advantage of to a grossly unfair degree based upon Defendant's conduct" and that what matters is "the fee, not the class member." (*Id.* at 8.) Plaintiffs believe their claim hinges on whether Defendant's fees were grossly higher than those of competitors and/or set in contravention of the Texas Government Code. (Doc. No. 146 at 33.) And because that question is capable of a single class-wide answer, Plaintiffs urge the Court to allow them to proceed on behalf of a class.

These arguments flout well-established understandings of unconscionability claims. Texas courts have held that "[w]hether an action takes advantage of a consumer 'to a grossly unfair degree . . . requires a showing that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *SCS Builders, Inc. v. Searcy*, 390 S.W.3d 534, 541 (Tex. App.-Eastland 2012) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)). In making this assessment, courts are to "look[] at the entire transaction, not just at whether a defendant actually intended to take advantage of the consumer." *Id.* (citing *Chastain*, 700 S.W.2d at 583). That includes inquiring into "the consumer's knowledge, ability, experience, or capacity." *Daugherty v. Jacobs*, 187 S.W.3d 607, 616 (Tex. App.-Houston [14th Dist.] 2006). For instance, where the allegation is that the consumer lacked necessary information, "[t]here

---

[8] Though there is some support, including this Court's October 2012 Memorandum & Order, for the proposition that an "unconscionable act" can be one that "results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration," *see McPeters II*, 910 F. Supp. 2d at 988, that particular half of unconscionability's definition was excised in 1995. *See* 1995 Tex. Sess. Law Serv. Ch. 414 (H.B. 668) (Vernon's).

must be a showing of what the consumer could have or would have done if he had known about the information." *Id.* (citing *Peltier Enterprises, Inc. v. Hilton,* 51 S.W.3d 616, 623 (Tex. App.-Tyler 2000).

Consequently, as Defendant has argued, adjudicating an unconscionability claim would require an inquiry into what class members knew about the e-filing system, the relative sophistication of the individual class members, and whether, upon learning about LexisNexis's system, they would have nevertheless chosen to file and serve in the same manner. The Court would also need to inquire into whether LexisNexis's actions were the "producing cause" of the plaintiffs' injuries, *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002), and because some of the proposed class members are clients who had the assistance of knowledgeable counsel, that may not always be so easy. These individualized inquiries appear likely to predominate over class-wide issues.

It is not surprising, then, given the signal importance to an unconscionability claim of plaintiff-specific details, that courts frequently deny certification of unconscionability class actions. *See, e.g.*, *Texas S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 244 (Tex. App.-Corpus Christi-Edinburgh 2008) ("Texas courts have consistently held that unconscionability claims involve highly individualized inquiries that are not appropriate for resolution by a class action."); *Wall v. Parkway Chevrolet, Inc.*, 176 S.W.3d 98, 105 (Tex. App.-Houston [1st Dist.] 2004) (accepting arguments that class certification was improper because "an individualized inquiry into each buyer's circumstances is required" and "inquiries are required to answer questions of causation of damages and of the amount of damages"); *Peltier Enterprises, Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. App.-Tyler 2000) ("We hold, therefore, that because of the numerous fact issues raised by the pleadings, which can only be determined by questioning each individual

plaintiff, the common issues do not predominate over questions affecting only individual class members.").

This Court reaches the same conclusion.  To be sure, the unconscionability analysis would, as Plaintiffs assert, look also at Defendant's conduct, but the Court believes that the individualized inquiries are too numerous, and too important, to certify a class.  Because Plaintiffs have failed to demonstrate predominance, the court **DENIES** their motion to certify the DTPA claim.

### B.  Motion for Summary Judgment

#### 1.  Legal Standard

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  Fed. R. Civ. P. 56(a).  "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation marks and citation omitted).

"Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party."  *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 188 (5th Cir. 2007).  The Court may not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party

that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 300 (2d ed. 1995)).  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a nonmovant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

### 2. *Analysis*

Revisiting the elements of an unconscionability claim, Plaintiffs must show that Defendant "t[ook] advantage of the lack of knowledge, ability, experience, or capacity of the [Plaintiffs] to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). Here, Plaintiffs seek to survive summary judgment on the strength of evidence indicating that Defendant's fees were high and mandatory.  On the face of Plaintiffs' submissions, it is hard to see any viable theory as to how even high and mandatory fees would take advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity.  The Plaintiffs assert that they did not know that Defendant's fees were neither approved nor bid, but they decline to make any argument as to, or present evidence that could show, what Plaintiffs would have done differently had they possessed that information.  There is no real allegation, or evidence, that Plaintiffs were misled, lied to, or otherwise taken advantage of, or that they lacked relevant knowledge, ability, experience, or capacity.  And, the need to undertake this inquiry is especially great here, where the Plaintiffs are a lawyer and an individual who was represented by a lawyer.  Given lawyers' education,

expertise, and professional responsibilities, courts scrutinize unconscionability claims brought by lawyers with special care.  *See, e.g.*, *Willcox v. Am. Home Assur. Co.*, 900 F. Supp. 850, 861 (S.D. Tex. 1995) ("This case, where the insured is a law firm, does not involve the type of unsophisticated consumer, the disparity in bargaining position, or the egregious conduct common to the cases where a defendant has been found to have engaged in unconscionable conduct."); *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 748 (Tex. App.-Fort Worth 2005) (relying in part on fact that plaintiff "was represented by a board certified real estate attorney who worked with the listing agent on the house during the purchase" in deciding "that there was no disparity in bargaining power"); *Saenz v. Martinez*, No. 04-07-00339-CV, 2008 WL 4809217, at *9 (Tex. App.-San Antonio Nov. 5, 2008) ("Given that Saenz's own evidence proves he was represented by counsel, we cannot say he has raised a fact issue on disparate bargaining positions."); *Poteet v. Kaiser*, No. 2-06-397-CV, 2007 WL 4371359, at *13 (Tex. App.-Fort Worth Dec. 13, 2007) ("The only action Appellants have presented any evidence on is the abandoned appraisal process — a process in which Appellants were represented by counsel.  And, because Appellants were represented by counsel, they were not 'helpless' as they described.").

Plaintiffs' best argument to avoid summary judgment — one they only hint at — is that whether or not any of them are, or had the services of, a lawyer is irrelevant.  Rather, the argument would go, Defendant's fees were unconscionable because, in the midst of a system that provided Plaintiffs no alternatives, Defendant set excessive fees.  It would be one thing, the argument would hold, for Defendant to charge high fees if Plaintiffs could simply resort to the marketplace and choose to do business with someone else, but it is something else entirely here, where LexisNexis was the sole provider of e-filing services, which, for certain cases, was mandatory.  In short, the argument would conclude, Defendant could have charged $1 million to

e-file and e-serve and even the most astute lawyer Texas has ever known would have had no choice but to pay up.

In theory, that is a viable conception of unconscionability.  To put it in the terms of the statute, Plaintiffs can succeed if they can show that Defendant took advantage, to a grossly unfair degree, of Plaintiffs' inability to choose an alternative system for e-filing and serving.[9]  There is case law, albeit only cited by Defendant and for a different proposition, to support that theory. *Saenz*, 2008 WL 4809217, at *8 ("'Unconscionability' has no precise definition because it is a determination to be made in light of the entire atmosphere in which the agreement was made, *the alternatives, if any, available to the parties at the time the contract was made, the nonbargaining ability of one party*, whether the contract was illegal or against public policy, and whether the contract is oppressive or unreasonable." (emphasis added)).  But to survive summary judgment, Plaintiffs must create an issue of material fact as to three issues: Plaintiffs lacked meaningful alternatives, Defendant charged unfair and/or excessive prices, and that, had Plaintiffs been offered the ability to choose another e-filing provider, they would have done so.[10]  Plaintiffs can clear that first hurdle, but the second two both prove stumbling blocks.

As for the severity of Defendant's prices, Plaintiffs argue that "Defendant charges almost double what one of its primary competitors, ProDoc, charged for e-filing and service, and its experts admit this."  (Doc. No. 162 at 17.)  They cite two pieces of evidence in support.  First, they cite the deposition of Defendant's corporate representative, Helene Christine O'Clock, in

---

[9] It is not enough for Plaintiffs to say that, had they been permitted to file in a manner other than electronically, they would have done so.  To countenance that argument would be to hold LexisNexis liable for the mere fact that e-filing was mandatory, even though it was the courts, and not LexisNexis, that required e-filing.

[10] These last two issues are not independent of one another; simple logic dictates that, the higher the prices, the easier it will be for Plaintiffs to show that they would have seized upon an alternative.  But, just as the plaintiff who allegedly lacks knowledge must show that he would have behaved differently with the relevant information, *Daugherty*, 187 S.W.3d at 616, Plaintiffs here must show that, had they been provided options other than LexisNexis, they would have availed themselves thereof.  To ignore that requirement would render "takes advantage of" in § 17.45(5) a nullity.  Such a reading would contort the statute to impose liability upon anyone who deals in any way with a person who "lack[s] . . . knowledge, ability, experience, or capacity."

24

which she says that LexisNexis-competitor ProDoc charged $7.42 for combined e-filing and e-serving. (Doc. No. 162-1 at 12.) Second, they cite Mr. Mays' LexisNexis invoice, which states that Defendant charged $15.98 for e-filing and e-serving. (Doc. No. 162-6 at 2-3.) Plaintiffs appear to be correct that Defendant charged somewhat significantly more than what ProDoc charged.[11]

Defendant, however, has brought forward an expert report that provides valuable context.[12] Dr. Michelle M. Burtis's report shows that, in 2009, LexisNexis charged $15 for filing and serving, while ProDoc charged $9.50, eLawServices $12.50, MyFileRunner $14.50, Court File America $15.50, and One Legal $26.45. (Doc. No. 152-2 at 19.) LexisNexis was in the middle of the pack. Data from 2006 for filing and serving separately compels a similar conclusion. With respect to just e-filing, LexisNexis users paid $6 per document and ProDoc users paid $5, but eLawServices users paid $8, Court File America subscribers paid $9, and One Legal customers paid $13.95. (*Id.* at 11.) So too with e-service: eLawServices customers paid $4.50, ProDoc users paid $5.50, LexisNexis consumers paid $7, CourtFile America customers $9.50 and One Legal subscribers $14.45. (*Id.* at 13.) Also worth noting is that Defendant's prices were more or less the same in other locales, where LexisNexis did face competition. (Doc. No. 152-2 at 15; *see also* Doc. No. 145 at 30.)

The expert reports submitted by Defendant explain that the services offered by the various e-filing providers varied just as much as their prices did. Dr. Burtis noted that "LexisNexis's products offered numerous features that were not offered by Texas Online or the Texas Online EFSPs." (Doc. No. 152-2 at 13.) Those features included "electronic clerk review

---

[11] With respect to Plaintiffs' comparison to ProDoc, Defendant's expert, Dr. Burtis, acknowledged that "ProDoc has the lowest filing and service price among all Texas Online EFSPs" but also noted that Plaintiffs had omitted certain fees from their comparison. (Doc. No. 152-2 at 17.)

[12] Defendant has cited a second expert report, that of Dr. Lauren J. Stiroh, but because she bases her price-related conclusions on 2013 data, the Court places less weight on her conclusions. (Doc. No. 145 at 66.)

of filings, electronic court rulings, docket linking, file stamping, alerts to monitor case activity, automatic case tracking, free email notifications of service or activity in the case, [and] free searching across courts and cases." (*Id.* at 13-14.)  Dr. Stiroh similarly concluded that "File & Serve offers services that have unique benefits compared to the services of other e-filing vendors." (Doc. No. 145 at 30.)  Basing her conclusions on Ms. O'Clock's deposition, Dr. Stiroh determined that LexisNexis's product "distinguished [itself] from its competitors in the area of delivery, management and access." (*Id.* at 30-31.)  Plaintiffs do not address the differences between the various e-filing providers.

Thus, all the summary judgment evidence indicates that Defendant charged a different price — higher than some, lower than others, and consistent with what LexisNexis charged elsewhere — and provided a different service.  The Court cannot see how a jury could possibly conclude that such prices were a part of a scheme in which Defendant took advantage of Plaintiffs to a grossly unfair degree.[13]

But the Court does not base its finding on the quantum of the prices alone.  Rather, summary judgment is especially appropriate here because Plaintiffs have not made *any* attempt to show that they would have always chosen ProDoc and its lower prices if given the choice.  It is entirely possible that they would have, but it equally likely that they would have opted to take advantage of LexisNexis's additional features, or even that they would have employed one of the even-more-expensive options.  Surely, there was some appeal to those choices if they continued to exist and charge their high-end prices.  And without *evidence* tending to suggest that Plaintiffs would have necessarily chosen an alternative provider, the Court cannot allow the claim to

---

[13] Plaintiffs make some reference to the fact that, as the sole provider of e-filing and e-serving, Defendant could have charged whatever it wanted.  Even if that were true, all that it would should would be that Defendant *could* have acted unconscionably.  Not only do Defendant's middle-of-the-pack prices refute that charge, the fact that Defendant charged the same prices in other locales, where it did face competition, makes even clearer that LexisNexis did not take advantage of its status as sole provider.

proceed.

In the end, Plaintiffs have failed to show that there is any genuine issue as to any material fact.  Defendant's Motion is **GRANTED**.

## IV.   CONSTITUTIONAL CLAIMS

Plaintiffs' Monopoly Claim, arising out of Art. 1, § 26 of the state Constitution, is based entirely on a violation of Texas Local Government Code § 262.021, which, as discussed above, governs competitive bidding.  For the reasons discussed in Section I, it too must be dismissed.

As for Plaintiffs' Open Courts and Right to Petition claims, whether they are capable of certification under Rule 23(b)(3) is the focus of only small portions of the parties' briefs, which fail to address such issues as whether injunctive relief is available in a Rule 23(b)(3) class action. But, the answer to that question is not likely all that important because, even without certification, injunctive relief would likely apply to more than just these two Plaintiffs.  The Court therefore turns to the motion for summary judgment.

Defendant urges the Court to grant summary judgment on mootness grounds, given that, in 2012, LexisNexis sold its Texas-based e-filing service and the Texas Supreme Court ordered all counties, starting January 1, 2014, to utilize a certain e-filing program called TexFile.  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The Court cannot credit the argument that LexisNexis will never again facilitate e-filing and e-serving in the relevant counties.  But, the mere fact that LexisNexis once did so is not what made its conduct (allegedly) illegal and thus not what it would have needed to cease doing to

moot Plaintiffs' claims.

What did make Defendant's conduct allegedly illegal?   Plaintiffs contend that Defendant's fees amounted to a "tax as a condition to access the courts."  (Doc. No. 162 at 22.) In their Complaint, Plaintiffs asserted that "Defendant's requirement for Plaintiffs . . . to pay more than the cost to litigants in [other] counties . . . restricts their access to the courts of the State of Texas, and violates their constitutional rights to open courts."  (Doc. No. 118 ¶ 115.)  To the extent that Defendant's fees were in fact higher than those charged elsewhere, the Court also cannot say that it is absolutely certain that LexisNexis will never do so again, and so the Court declines to find Plaintiffs' claims moot.

As for the substance of Plaintiffs' claims, "the general open courts provision test balances the legislature's actual purpose in enacting a law against that law's interference with the individual's right of access to the courts."  *LeCroy v. Hanlon*, 713 S.W.2d 335, 341 (Tex. 1986). The Texas Supreme Court has held that "[f]iling fees and court costs are usually constitutional," but that "filing fees that go to state general revenues — in other words taxes on the right to litigate that pay for other programs besides the judiciary — are unreasonable impositions on the state constitutional right of access to the courts."  *Id.*  Plaintiffs do not make separate arguments on their Right to Petition claim.

Defendant argues that "[b]oth claims require a party to prove that he was actually prevented from filing a cause of action."  (Doc. No. 156 at 29 (collecting cases).)  That is not exactly true, but it is also not the case, as Plaintiffs urge, that a mere "official impediment," whatever that means, will do.  (Doc. No. 162 at 22.)  As indicated by the case that Plaintiffs cite to make that suggestion, if Plaintiffs cannot show that they were prevented from filing a claim, they must at least show that they were delayed in doing so.  *See Hinds v. Dallas Indep. Sch.*

*Dist.*, 188 F. Supp. 2d 664, 673 (N.D. Tex. 2002) ("The right of access to the courts is implicated 'where the ability to file suit was delayed, or blocked altogether.'" (quoting *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994))).  Plaintiffs do not even attempt to make such a showing.[14]  On that basis alone, the Court grants summary judgment for Defendant.[15]

## V.  CONCLUSION

For the foregoing reasons, the Court reconsiders its earlier ruling and **GRANTS** Defendant's Motion to Dismiss Plaintiffs' claims under Section 15.05 of the Texas Free Enterprise and Antitrust Act (Doc. No. 68).  Second, it **DENIES** Plaintiffs' Motion to Certify a Class for the purposes of their unconscionability claims (Doc. No. 146).  Finally, it **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 156.) on all remaining claims.  Plaintiffs' Motions for Partial Summary Judgment (Doc. No. 155) and for a Protective Order (Doc. No. 157) will be **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this 31st day of March, 2014.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**

---

[14] Beyond the mere fact that Plaintiffs had to pay the filing fee, which, on its own, does not violate the open courts provision, Plaintiffs have articulated no way at all in which the filing fees in the relevant counties interfered with their ability to access the courts.  Thus, to the extent that the balancing test articulated in *LeCroy* suggests that a plaintiff may be able to state an open courts claim even without demonstrating that he has been prevented altogether or delayed in filing — for instance, a plaintiff who was not delayed in filing a lawsuit, but who had to forego eating for a weekend due to exorbitant filing fees might have a viable suit — Plaintiffs' claims nevertheless fail.

[15] And, while the Court need not get this far, Plaintiffs have another problem: as explained in the Court's discussion of the unconscionability claim, Plaintiffs really have not shown that Defendant's fees were excessive, and so their whole theory of liability on the constitutional claims is quite dubious.